14-1586 Progressive Casualty v. Liberty Mutual Insurance Progressive Casualty Insurance She's just reminding me you're into your rebuttal time. But you can finish the sentence. It's your time to do it. Thank you. May it please the Court. With respect to the appeal concerning the 598 patent, as Your Honor recognized, priority is the only question. It's dispositive of the appeal. The arguments that Progressive is advancing here, both with respect to the claim construction of driver safety score and the argument that somehow driver safety data might be entitled to an earlier priority date, given the driver safety score or not, are both waived. Neither was preserved before the Board. With respect to claim construction, I cite the Court to page A3118. This is the patent owner response filed by Progressive. Can I just ask, I thought that I was reading you to suggest that a claim construction argument fully made and cleanly rejected at the institution stage must be raised again after institution. And I can imagine that a system might work that way, but in the absence of some clear notice from the Board that you have to rehash issues that you've fully raised and have been cleanly rejected, we don't ordinarily require litigants in any form to make every argument twice. Well, Your Honor, I think that there is a difference in the procedures under the AIAA that... Did something in the regulations say any argument that you made at the institution stage, doesn't matter that you made it before, clean slate after we institute and you have to make all arguments again or you have waived them? I'm not aware of a regulation to that effect. In the Versada case that the court recently decided they did hold that the party had waived an argument because it did not advance it again in patent owner response in response to the institution decision. What argument? I don't remember which one. There's a lot of that. And I'm forgetting what the specifics were. But here, I think what's significant is the way that the procedure is laid out is that there is, by its nature, only a tentative decision by the court in the institution decision. And we know that progressives understood that. That's why, as I say, I can imagine it would be sensible. But in the ordinary course, there are a lot... In a trial, pre-trial claims instructions, they're subject to modification later. That doesn't mean you have to keep raising them at every stage, including a jury instruction stage. So if there were clear notice in which the board said, forget everything we said at the institution stage, if you want to object to it, you've got to use some of your pages in the patent owner's response to do it, then that's one thing. But knowing waiver by virtue of not re-raising something that has been clearly argued and cleanly rejected? Well, a couple of responses to that. First of all, progressive understood that it could contest issues that were decided in the institution decision as it did with level of risk. We're not talking about could, we're talking about have to. The board certainly understood that progressive, when it stated on page 3118, progressive will apply this construction for purposes of this procedure. Right, the board did understand, it said it agreed. Forget about what the board understood. You're saying they waived something. Waiver is something that usually you have to have notice about an obligation to do something and then fail to do it. And I'm not seeing why that's the case. Well, I think here, to the extent that progressive  progressive could have sought re-hearing before the board and it did not do so. And again, I think there is something important about the structure here. Liberty, under the procedures before the board, does not have an opportunity to file a reply to the preliminary patent owner's response. The preliminary patent owner's response is filed to the petition and then the institution decision comes down. Then in the patent owner response, the patent owner lays out all of the arguments that the patent owner has in rebuttal to the institution decision. It is only at that time, after the patent owner has filed two 80-page briefs, that the petitioner has the opportunity to file a 15-page reply to the arguments in the patent owner response. How many pages are there in the petitioner's petition? 80 as well. So there's been 80, 160, 15. The petitioner does not have the opportunity to respond to arguments that were made in the preliminary patent owner response that have now been abandoned in the full patent owner response. You're talking about an argument on which in the institution decision the board agreed with what you wanted to argue? Why would they need to argue about that? To the extent that Liberty would have had additional arguments to make in response to an argument, I think you're asking a question of procedure before the board, and I do think that. I don't know if it happened in this particular proceeding. I do know that in some of the proceedings between Liberty and Progressive that the board gave notice that any argument that the patent owner wanted to preserve had to be included in the patent owner response. And there's good reason to do so because, as happened here, the board is going to believe that an issue has been abandoned if the party indicates that it is applying that rule in the procedure. They could have simply noted, and we continue to stand on our objection, the board would have known if there was any need to further address that. They didn't. They relied on Progressive's agreement. Liberty relied on Progressive's agreement by not addressing it further. So I think that the issue has been weighed. Certainly the issue with respect to Claim 33 being different has been weighed. Can I turn away from this and focus on this estimated cost not being a rating safety factor? Rating factor. No, no, no. The rating factor. Driver safety score. Driver safety score, sorry. Why is it not, if the estimated cost in turn is based on certain driver behavior, why is the cost itself not a driver safety factor? Well, as the board explained, the premium itself is the final answer. It is calculated based on the driver safety score. So the premium can't also be the driver safety score. Progressive tried to engage in what I would characterize as sophistry, sort of just engaging in definition upon definition that sort of turns the world upside down. And they said, well, a driver safety score is a rating factor and a rating factor has been defined as something that is used to determine a premium and therefore a premium necessarily includes a driver safety score. And that's simply not true. It's not sophistry. It's just an erroneous Venn diagram. There we go. Better characterization. Take rating factor out of it. What textual evidence in the claims or the specs indicates strongly or otherwise that an estimated cost is not a driver safety score? Because under the terms of the 598 patent, the driver safety score is used to calculate the premium. And the premium is not the same as the estimated cost? Well, in the... They're going to be related, but everything is related here. That's true. See, in the 650 application, there certainly is... I mean, I guess one question is, are we accepting or are we not accepting the board's construction? Because I think that even if that issue is preserved, the board's construction of driver safety score is warranted. The term that is being construed or the phrase being construed is responsive to a request to quantify driver behavior by processing the selected onboard vehicle data to render a driver safety score. Both the terms quantify and score connote numeric and calculation. I noticed that in their reply brief, progressives cite a dictionary definition of quantifier and quantity and suggest that neither support the notion of calculation. When a party cites definitions of words that are not at issue in the claim, my antennae go up and I look at the same dictionary's definition of quantify, and it defines quantify as to find or calculate an amount. Similarly, score, in that same dictionary, is defined as a number of points. So both of these terms suggest, as the board rightly concluded, that there is, for a driver safety score, some manner of calculation of numeric points that is being applied. And that was supported further by the specifications and the additional text that was added. But between the 650 application and the 598 application, the progressives added 12 new figures, 13 columns of text, most of which is addressed specifically to this feature of the 598 patent. And specifically, figure 9 is the figure that demonstrates the driver safety score. And it is, indeed, a calculation of weighted figures. 0.5% to one measure of safety, 0.25, to another measure of safety, 0.3, to another measure of safety, add them up, and you get driver safety score. That's window 918 in figure 9. So the board had ample support for its construction of this term in the claim language and in the specification. I'm going to just press on this just a little bit more, and I think I'm going to sound a little bit like a broken record. So an estimated insurance cost, that's a number. It has a dollar sign in front of it, but so what? And why is an estimated insurance cost not a driver safety score? Because, Your Honor, it may be, but it is not necessarily. That's the problem. The 650 application is, by its own terms, rooted in the old way of thinking about insurance, which was actuarial class. And what it said the 650 application was doing was that it was an object of the present invention to generate actuarial classes and operator profiles related thereto based on actual driver characteristics of the vehicle and driver as represented by monitor recorded data elements for providing more knowledgeable enhanced rating precision. So it's actuarial classes. They're making actuarial classes more accurate, more specific, but it's rooted in this notion of actuarial class. One can calculate a premium or even an estimated cost of insurance, which is just a precursor to the premium, based on actuarial class without any need to go through the process of calculating a driver safety score, as the Board rightly held. Because a driver safety score is reflected on, and I think it is related to this notion of rating factor, the description, specification rather, in the 598 patent, this is in A112, column 22, 18 through 22, says a rating factor such as a safety score. So driver safety score is one version of a rating factor. It may be one version of a way to calculate an estimated cost. Am I correct in another version of a rating factor would be an automobile safety score? That's true, because there is this distinction that's being drawn between what this is claiming is something that is specific to the driver. And that's why we say that the word individualized is appropriate here, because it's not about actuarial class. That is the invention of the 598 patent, or it's the claimed invention. Of course, we know now that Berge and Nakagawa invented it first, but that is what was claimed. That was what was different from the old actuarial class. Actuarial class can be smaller or larger, but it's all about sort of a group of people. Driver safety score is calculated for the individual. And although, again, it may have been done, the 650 application may have been done with such calculation, it was not, there is no written description of that. All that's described is calculated and estimated cost and then ultimately a premium based on these more accurate actuarial classes. Again, this is at A211. It says, it provides a classification rating of operator unit in an actuarial class, which has vastly reduced rating error over conventional insurance cost systems. So again, actuarial class is how the 650 application characterized it, not individual driver safety score. Driver safety data, if I could just briefly, because it was referenced a number of times by progressive. The board's institution decision singled out driver safety score, said there was no written description of 650 application, therefore none of the independent claims were entitled to priority on that basis. And the board specifically referred to claim 33 as one of those independent claims that was not entitled to priority because of the absence of written description of driver safety score. If progressive had thought that claim 33 was different, it was required to say something about that in the patent owner response. They did not. To the contrary, they have a claim mapping chart that treats driver safety data with the representative claim one language about driver safety score. They actually do single out two other claims, claims 48 and 78, as non-representative claims. They do not single out claim 33 as a non-representative claim. That argument as well. Thank you. Thank you very much. Thank you. Well, if you're here to talk across us, I guess there are a few issues that have come up. I finally get to say something. May it please the court. I was hoping I didn't lug all this stuff on the metro for nothing. The point of instituting trial is so that the board can render its final written decision under 328. That is where the board explains why the claims are or are not unpatentable. In this particular case, trial was instituted. The sole issue was priority. Progressive filed an extensive patent owner response of almost 50 pages of why its claims were entitled to priority to the 650 application, including interface module. The board renders its final written decision and it discusses the issues that Progressive has raised. That's what Congress contemplated when it wrote the statute. That's not procedural error. The corollary to that is the institution decision under 324 does not purport to limit the board's analysis in a final written decision. This isn't a scenario where we institute trial for the sole purposes of trying to figure out whether or not they got the institution decision right. The point of the institution decision, frankly, is captured at A3074, which is the last page of that decision, and it says, here's why we're ordering trial under 324. Here are the grounds, 102 under Nakagawa, 102 under Burge, 103 under Burge and Herod. Trial gets instituted. At that point, the world's your oyster if you're the patent owner. You make the arguments that you think are pertinent as to whether or not you can defend your patent. The corollary to this is the institution decision, in an effort to be helpful, will give you the board's preliminary analysis of the issues that you've raised. But that analysis is exactly that, preliminary. It's not a rejection. It's not a binding statement on unpatentability such that when it gets to the final written decision, it's stuck with what it said there. No, I know, but there's got to be some limits. The board just can't come up with something new and different that hasn't been the subject of some discussion or opportunity for the other side to respond in its final decision. And that's fair, Your Honor, and in this case, for example, this interface module priority question clearly raised, the preliminary response raised it, the board addressed it in its institution decision, the patent owner response addressed it, the reply addressed it. I mean, this was vetted thoroughly. Can I just say, I think I'm a little confused about what procedural issue we're actually talking about in this case. This case involves nothing of that new ground of rejection. You know, Your Honor, that's an interesting point because I didn't think it did either. But the discussion in the moving case sort of had a flavor of the board not only reached outside the petition in its institution decision, but then it shifted grounds from the institution decision to the final written decision, which had that new grounds flavor. Well, I mean, I think there's something there. It's not as drawn out and it's not as detailed as in groups one and three, but there is this little piece, and I think your friend talked about it, just dealing with the interface module piece of it. Judge Rano, your question actually hit on something as I was sitting there. Gave me some pause, but since it seems to have been fleshed out, you're correct. If you read that blue brief, you will not see an argument that somehow there's... Right, so in the statement of the issues, the blue brief says the board legally erred by sui sante raising the issue of written description support from the interface module. When did the board do that? In the institution decision? I think that's their argument, and as we discussed in our blue brief, that's a challenge to the institution decision, which, of course, under quota was categorically foreclosed. And even if this court were inclined to reach it, as I detailed in my brief, they raised it. So I don't know what the board is supposed to do. If you file a preliminary response and you make arguments, the board is going to engage them at some level, and you can't complain procedurally the board erred by doing something I asked it to do. But that is a challenge to the institution decision, which quota precludes. The other thing I'll add, too, on the moving, my friend made the argument that the board commingled driver safety score and driver safety data. This referenced the fact that Claim 33, among all the independents, has the data and not the score. Well, the reason why, if the board commingled, that's because Progressive commingled. As we detailed in our brief at 14 to 15, all of the arguments that Progressive made for the independent claims, which is one and includes 33, relied on the same disclosure for these pertinent limitations. And you in your brief have not addressed this question that I was harping on about estimated costs being or not being a driver safety score. Is that right? I have the cover of saying no, we did not address that. So if there are any other further questions about the procedural issues, I'll close the time. Thank you. Your Honor, as to the point of the estimated cost of insuring the event, that's at A212. The 650 specification. And that is something that is admitted to be disclosed. It's something that... The question is whether it constitutes the same claim. So I'm not entirely sure. Well, I should say I'm not really sure that I understand the chain of logic that says specifically an estimated cost cannot be a driver safety score. But the general idea seems to be the driver safety score is something that enters into an estimation of cost and other things. And the estimation of cost will take account of driver safety and automobile safety and other things. So it can't really be the same. So what's your best argument for why the estimated cost can nevertheless be a driver safety score? And while you're doing that, do it as a logic exercise as well. When I made that Venn diagram comment, I was specifically talking about that basket of other possibilities, automobile safety, for example. Remember, we have two arguments on this, estimated cost and also classification rating. An estimated cost would be based on some type of rating, a classification rating. It's admitted that a classification rating is disclosed at A212. The classification rating is discussed in Claim 40 as being a rating factor which is a type of driver safety score. And so a rating factor driver safety score is something that's implied as it's used in this specification to relate to something that is a driver safety score. Okay, can I ask, the board said, and I'm reading from A27, page 27 of the final written decision, there is no dispute that an insurance cost is not a driver safety score. Is the board wrong? There is, in fact, a dispute about that? Insurance cost requires a rating. And this is where I think the emphasis is on the rating factor. I don't believe we're saying that an insurance cost by itself, necessarily, is a driver safety score. It is a numerical number. But the insurance cost is necessarily based on a rating factor. That rating factor is a driver safety score. The score does not have to be a numerical driver safety score. It simply can be something that's quantified as it is in the specification, as high, low, excessive, or otherwise. And when you look at driver safety data, data makes it clear that you do not have to have something that's quantified as the score. There's a difference between driver safety data and driver safety score. And the board recognized that difference and said that driver safety data is broader than driver safety score. So that's our argument. And as to the waiver issue that was raised, that's discussed in our gray brief at pages 20 and 21. We separately provided written description support for all of the claims, including claims with the driver safety data, Claim 33. And this is something that we believe has been pursued. So if the board does, if the court does find that driver safety data is disclosed, then that will support Claim 33, separate and independent from the other claims. I see that my time is up. All right. We thank both counsel, and that case is submitted.